

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

AUG **0 9** 2021

Clerk, U.S. District Court
Eastern District of Texas

FRANCIS PALARDY,

Plaintiff,

v.

SOFTWORLD, INC., UNITED SERVICES
AUTOMOBILE ASSOCIATION a.k.a. USAA

Defendants.

Case No. 4:21 cv 625 SDJ CAN

COMPLAINT

JURY TRIAL DEMANDED

## NATURE OF ACTION

1.      This action is for compensatory damages under Title I of the Americans with Disabilities Act
of 1990, as amended (ADA) 42 U.S.C. § 12101 et seq, Title I of the Civil Rights Act of 1991, and a
pendant claim under Texas Labor Code § Chapter 21 to remedy unlawful employment practices on
the basis of (1) disability and (2) failure to accommodate, and to provide appropriate relief to
Plaintiff, Francis Palardy, who was adversely affected by such practices. As detailed below Plaintiff
alleges that Defendants Softworld, Inc. and United Services Automobile Association (USAA)
discriminated against Plaintiff in violation of the ADA by denying him the ability to use Bluetooth
technology and video capability that were built into available computers and by terminating him at
the start of Covid-19 without informing him that the project had moved remotely.

## JURISDICTION AND VENUE

2.      This court has subject matter jurisdiction over federal law claims pursuant to 28 U.S.C. §
451, 1331, 1337, 1343. Civil action is authorized pursuant to Section 107(a) of the Americans with
Disabilities Act of 1990 as Amended, 42 U.S.C. § 12117(a), which incorporates by reference Section
706(f)(1)and (3) of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e-5(f)(1) and (3), and
pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. Section 1981(a).

3.     Venue is appropriate because the employment location was at WeWork near the USAA

facility in Plano, Texas. (28 USC § 1391). This is within the jurisdiction of the United States District

Court for the Eastern District of Texas, Sherman Division.

## PARTIES

4.     USAA is a reciprocal inter-insurance exchange organized and existing under the laws of

Texas, located in San Antonio, Texas.

5.     Softworld, Inc is a technology contracting company located in Waltham, Ma. According to a

press release Softworld was recently bought by Kelly Services, of Troy, Michigan, but has not

merged with Kelly Services.

6.     Plaintiff Francis Palardy is a citizen of the United States of America. Plaintiff is a resident of

The Colony, Texas.

## GENERAL FACTUAL ALLEGATIONS

7.     Defendants provided helpful statements to the EEOC. Some statements claim that they are

private and confidential, but the EEOC redacted the confidential parts. It would be difficult to ignore

these statements, and they do cause this complaint to be longer.

8.     Plaintiff began working as a Java Programmer for Defendants in July 2019 at the secure site

they called the Onshore Development Center (ODC) set up at WeWork in Legacy North, Plano,

Texas. This is a block from USAA corporate offices. The managers of USAA sometimes visited us

and Plaintiff sometimes went to meetings at USAA offices. All software was controlled through

virtual machines by Defendant USAA. Plaintiff and other programmers logged into a remote virtual

system that only existed in the cloud or servers controlled by USAA. Programmers including

Plaintiff were not allowed to install any software. Programmers requested what software they

wanted and it was installed by USAA overnight if they approved it. This establishes that Plaintiff

worked under control of Defendant USAA. Programmers used local desktop computers but had little

Page 2 - Complaint

control over these local computers. Programmers were instructed not even to turn the computer off and on.

9. Programmers were not allowed to make any changes to the local computers, including specifically to attach any devices. This was limited not only to USB devices but headphones. Each programmer was assigned an identical headset that included a microphone. Plaintiff has a headset for his cochlear implant. The ODC rules forbid any personal headsets. Although Plaintiff can wear headphones on top of his headset this does not meet the definition of compatible. In recent years hearing aids and cochlear implants have Bluetooth compatibility, which allows for a direct connection. Bluetooth was built into the local computers used by Plaintiff, but was disabled and USAA would know if Bluetooth was enabled.

10. The 21st Century Communications and Video Accessibility Act (CVAA) requires any telephone-like communication to be compatible with hearing aids. The CVAA spells out requirements built into electronic communication devices. Defendants equipment complied with the law out of the box but they disabled compatibility with Bluetooth. Presumably Bluetooth was banned as a security issue, but Defendants never gave any details. There is no evidence Bluetooth has ever been used in a security attack in a situation like this. Even the director of the NSA, James Clapper, received a waiver to use Bluetooth with a hearing aid. The ODC did allow smart phones, which are much more of a security threat. Softworld could have installed desk phones in the phone booths WeWork had set up. Defendants were inconsistent, which is discriminatory against Plaintiff.

11. The CVAA also implies video is used in video conference, which makes a difference to Plaintiff. The law even requires captions, although Plaintiff did not expect that. Defendants repeatedly ignored Plaintiff's requests for video in the video conferences. Defendants were using Microsoft Skype for Business. This is referred to as a video conferencing service by the CVAA, but USAA typically did not use video other than security type video. There were a dozen or so video

cameras along the walls of the WeWork ODC, plus cameras in each conference room. These cameras sent feeds to USAA. Each room at USAA has a wide angle camera that does not have a good view of the person talking. In other cases programmers or managers at USAA contacted the meetings through their laptop, which would almost certainly have a camera built in, but they did not use it. The use of Skype video as CCTV type security is certainly not standard. Plaintiff suspects this is related to USAA being military controlled, but it is a business and USAA is required to provide accommodations, certainly those that are free and built in to available hardware and software.

12.   In their statement to the EEOC Defendant USAA claims they did not employ Plaintiff. They claim Softworld was the employer. Defendants may have intended the project to work that way but at key times USAA crossed over the line. Softworld may have paid for the office space but it was built to USAA's specifications. No one has worked in this space for more than a year. Plaintiff alleges USAA covers the cost. Softworld assigned Plaintiff to his team, but USAA interviewed Plaintiff and approved him. USAA later asked he be removed from that team. Softworld set the hours, but they were USAA office hours. The work Plaintiff did was part of USAA's business. Plaintiff's team worked on a project that was difficult to do remotely. His team often went to the USAA office and was directed by USAA managers daily. When Plaintiff complained about lack of accommodations they took Plaintiff off the team. Softworld claims USAA asked to remove Plaintiff from this team. There were no other clients so Plaintiff continued working on USAA projects even as they avoided him.

13.   The first few weeks in this position programmers like Plaintiff did not have computers of their own. It took a week or so to assign each programmer with their own password. This was carefully done through the Scrum Master. No passwords were emailed or passed around through third parties. Since USAA exercised so much control it took time to approve the software used in the virtual machines. In some cases it took a month for certain applications. This was so annoying some

people quit, including the team lead for Plaintiff and another team lead for a related group. Plaintiff was part of three teams that focused on the Payments Platform. These teams reported to Alicia Riley at Defendant USAA. In the early weeks USAA did tell programmers not to put USAA on their resume. USAA said wanted the project to be low profile. They were in total control of programmers and the environment, including making the rule that no outside headsets are allowed.

14.     Training is an area where accommodations need to be provided regardless of who the employer is. During those first few weeks the teams went through training in WeWork conference rooms using Skype. Speakers from USAA explained banking systems and how USAA technology works. Plaintiff missed much of this information because of the lack of normal video and Bluetooth. The sound in WeWork conference rooms was poor. The speakers were of the cheap computer variety. Several people complained about not being able to hear. There was either no video or video from a security camera. Plaintiff emailed the site supervisor David Settlage on August 1, 2019, the first week on the job. Plaintiff asked if he could use Bluetooth, which makes a direct connection to his cochlear implant. In this case Plaintiff could connect to Bluetooth through Settlage's laptop to the Skype call. Settlage responded no, that Bluetooth would not be allowed on the project. Since USAA email was not set up yet this communication was through Plaintiff's personal email. This was clearly a denial of reasonable accommodation.

15.     Settlage stated that programmers would each have our own computer soon. He asked if Plaintiff would be able to hear better at his own desk. Plaintiff was disturbed by this response as he had a similar problem at a previous job where he was terminated because of this issue. Plaintiff responded to Settlage providing more information about his implant and why he used Bluetooth. Plaintiff can use a "streamer". The streamer connects to the implant and to Bluetooth coming from the phone or computer. You can also plug a streamer into a headphone jack, although that would not allow Plaintiff to use the microphone built into the headset. The desktops in the WeWork ODC did

not have microphones. There are also telecoils, which are often built into a court room, but not available at WeWork. Settlage never responded to Plaintiff's second email regarding Bluetooth.

16. The WeWork ODC was loud like a cafeteria. Normal hearing aids have speakers that amplify sound. With a cochlear implant there is no sound. The brain is tricked into thinking sound is coming in through wires inserted into the ear. The best explanation Plaintiff heard was from the surgeon who said your brain figures how to use it. Headphones have a speaker that the microphone on the implant receiver picks up, which is not needed with Bluetooth. The implant can connect directly. In a loud environment that means there is less background noise. Without Bluetooth Plaintiff would be limited in using a phone. Plaintiff tried to explain his implant to Defendants to get approval to use Bluetooth. If they wanted medical information they should have asked early on, but they did not deny Plaintiff has an implant, which is visible. Plaintiff also carries a card with basic implant information in case it sets off a metal detector, which it has not.

17. A few days after Plaintiff asked about Bluetooth Settlage made a project wide announcement to make clear that Bluetooth was not allowed on the project. Settlage issued a written statement banning Bluetooth the same day. This made Plaintiff concerned that he might be terminated. For the next several weeks and months Plaintiff was under heavy stress because of this refusal to accommodate. It seems Defendant expected Plaintiff would quit. The project had a high turnover. That Plaintiff was denied Bluetooth in writing was a malicious refusal to accommodate.

18. After Settlage denied Plaintiff's request to use Bluetooth he turned to his Scrum Master, Jeff Stephens. Stephens did forward phone numbers for the video calls such that Plaintiff could call on his own phone. This allowed Plaintiff to use Bluetooth through his phone. This was prior to USAA email being set up so Plaintiff has a few emails from these conference calls. The emails originated from USAA managers such as Alicia Riley. When Settlage found out that Plaintiff was calling the video conference he stopped forwarding these emails. This training was in WeWork but outside of

the secure site so security was not even the issue. It seemed they did not want Bluetooth anywhere based on this contract between Defendants. Even as Plaintiff was able to get accommodations Defendants moved to block him from doing so. The ADA prohibits an employer from participating in a contract that subjects an employee with a disability to discrimination.

19.    Softworld claims Plaintiff never asked for an accommodation related to video but this is not true. Plaintiff has emails with Stephens complaining about the video or lack of video. Stephens said he couldn't do anything about that. Later Plaintiff informed Softworld that he had filed lawsuits in federal court related to video in video phone calls. It is hard to believe Defendants did not look at these lawsuits and see that Plaintiff complained about video not being provided. The video was available, but Defendants refused to consider the issue, which was a failure to accommodate.

20.    Once programmers were assigned a computer all email went through USAA. It was impossible for Plaintiff to copy those emails. USAA also set up emails so they were deleted after four months. The project was intended to complete compliance for USAA's regulators and as such everything was supposed to be recorded and saved. USAA was fined $85 million dollars by their banking regulator for compliance issues, which is why they needed to hire many tech people. USAA was long limited to offering insurance to officers in the United States military. They expanded into banking, and with the internet opened up to any active duty military persons and their families. USAA without a merger became one of the twenty biggest financial institutions in the United States. Defendant USAA destroyed evidence of their refusal to provide accommodations, which is reckless and demonstrated USAA controlled Plaintiff's communications at work.

21.    Settlage was proud of the ODC, which he claimed was copied from offshore development centers. Settlage refused to make any changes, but Plaintiff suspects there were differences from foreign countries. The Legacy district includes shops such as Gucci, Louis Vuitton and Tiffany. Defendants tried to make up for the higher rent by squeezing programmers tighter. Looking at

Page 7 - Complaint

photos of offshore sites on the internet they are typically like a classroom with everyone faces the same direction. The ODC workers were back to back with little space between. There were 15 teams of 8 plus Scrum masters and others in one room. It is unlikely a wheelchair would be able to make it beyond the first few desks during working hours. Plaintiff could reduce noise by turning off rear microphones on his implant, but then people thought his implant did not work. Plaintiff's team members began to avoid communicating with him. Defendants set up the work environment with no concern for accommodations, and refused to consider the issue.

22.    Jeff Stephens quit Plaintiff's team immediately after he hooked up his streamer during a Skype call. Plaintiff became annoyed at noise interfering with his ability to hear. He brought his streamer to work and plugged it into the headphone jack. He turned the computer off and on so Microsoft Windows would recognize the streamer. It still did not work so Plaintiff shut down Skype Business. He meant to shut it down only for himself but Plaintiff accidentally shut down the conference call for everyone. This was several teams along with USAA managers and trainers. Microsoft has discontinued this version of Skype because it was not stable. Plaintiff received a call from Softworld in Boston a few minutes later. Plaintiff did not answer. This was before they gave clear rules about using phones. Plaintiff was afraid he would be fired. Although it was not intentional this made his hearing issue known to several people at USAA, including Alica Riley. USAA was required to give accommodations during training even if they were not the employer.

23.    Plaintiff sometimes asked USAA employees if they could use video with Skype calls, but was ignored. After USAA's yearly programmer conference in September 2019 Plaintiff sent Frank Robinson of USAA an email regarding the video. Robinson often worked with Plaintiff's team. Plaintiff could see Robinson well enough to read his lips but the technical architect for USAA, Randy Brandt, was too far off in the corner. Plaintiff believes he copied Brandt on this but no one from USAA responded. Plaintiff did not copy Softworld on these emails because they had no way to

connect to USAA email system. (Later Settlage did get access.) Plaintiff was hoping to connect with someone at USAA who might help him get accommodation. Many veterans have disabilities. The Disabilities Act was passed by a congress full of veterans. Plaintiff did not understand why they refused to respond, or at least ask Softworld to respond and comply with the law.

24.     Plaintiff's team worked on a project related to the Federal Reserve real-time wire and batch transfers. These are old programs. The real-time programs were updated a few decades ago, but the batch programs have parts that date to the 1970s. All banks balance their accounts with each other through the Federal Reserve using these programs. Plaintiff's team needed to learn software used to develop these programs. That included newer software being developed and old programs compiled through another system. This is not a typical setup so people from USAA needed to train his team and continue to work closely until Plaintiff's team was integrated with USAA managers.

25.     Early on the training for the Fedwire project was done through Skype, but later Plaintiff's team went to USAA in person where Plaintiff could hear fine. Plaintiff was also able to follow some chats at his desk the headphones in the ODC, but the sound was not as good as Bluetooth and it mattered without video. Plaintiff also had trouble hearing team members because most of them were from non-English speaking countries. Several programmers quit Plaintiff's team and two other Payments teams. Within eight months all twenty programmers on those teams were gone. Some were hired at other banks like JP Morgan. Most of the team had little experience with older software. If Plaintiff had been given accommodations he could have helped them. Instead Defendants favored the younger programmers who did not want to learn old programs that would be phased out soon. Likely concerned the project was failing as weeks went by USAA worked more and more closely with Plaintiff's team until they were paired with a team of USAA employees. Their claim not to be the employer was breaking down.

26.     Plaintiff interviewed at many of the biggest companies in Dallas before covid. Most of them are nearly entirely Indian. Plaintiff often had trouble understanding questions in interviews. Softworld management and recruiters were all Americans so Plaintiff did not have trouble understanding them over the phone. The largest group of programmers on Plaintiff's team came from India. If Plaintiff could not understand one of them the others would refuse to talk to him. Plaintiff tried to communicate through email but others would not respond. One Indian programmer told Plaintiff he is deaf. This information was given to new people hired such that they would not talk to him and do odd things like fake sign language. Plaintiff was forced to argue that he is not deaf. After multiple Indian programmers quit Softworld began to treat them more favorably, while showing no concern for Plaintiff's accommodations. Defendant USAA also favored foreign programmers in hiring. Every day Plaintiff received dozens of emails from the Payments Platform team at USAA. The Payments Platform managers sent out emails when they hired someone. From what Plaintiff saw nearly all USAA hires were foreign.

27.     Plaintiff had difficulty getting information or help from either Softworld or USAA. He watched as a new employee from India, Saravana Anadan, received help without asking. A series of Indian women from both Softworld and USAA stopped by his desk, maybe ten. When Plaintiff attempted to contact some of the same women they ignored him. Plaintiff believes this is related to Hindu religious rules requiring them not to get too close to non-Hindus of the opposite sex. Indians also have a problem with hearing aids. According to reports on the internet Indians can have their driver's license revoked if they get a hearing aid. Indian culture does not comply with American law, and it taps into bigotries that were once more common in America.

28.     Plaintiff did not chat much with Anadan. He was a few seats over. One day Anadan screamed at Plaintiff like a drill sergeant. He's a big guy, and he stood above Plaintiff. Anadan kept repeating an acronym, IDE. We were using Intellij, an IDE owned by a Russian controlled company, Jetbrains.

The major media suggested Jetbrains may have been tied to the hacking of Solar Wind in April of 2021. Even after he understood "IDE" the Plaintiff was not sure what Anadan wanted. Anadan insisted on getting into Plaintiff's IDE. Anadan quickly typed a series of hot-keys. These are key combinations. It caused everything in Plaintiff's IDE to delete. Plaintiff was not as good with Intellij as the younger programmers because he used older IDEs like Eclipse, which the team used for older programs. It took some time to recover his lost files. Plaintiff was shocked later when Anadan spoke English well at USAA meetings. Everyone speaks more clearly to a boss, but this was extreme. To refuse to speak English to someone with a hearing loss is discriminatory.

29.     A few weeks later Anadan sent Plaintiff a message requesting that he pay five dollars for a festival, Diwali. From what Plaintiff read in Southern India it's a worship of Kali. This is where many Indian programmers come from. Kali was the goddess the cult worshiped in Indiana Jones and Temple of Doom. They sacrificed people to her. In 1990 Plaintiff saw something like Kali at a Grateful Dead concert. Kali had a baby and ate it. Plaintiff did not wish to attend this festival. The Diwali "feast" was in the middle of the day. Given the tight security Plaintiff was unable to get out of it without being noticed. Work events were held during the festival, which went on a few hours. Several people dressed up but Diwali is not a toga party. Hinduism is a major religion. There are photos of this festival. The Americans who dressed up the most were given promotions in the coming weeks. Plaintiff did not complain about religious discrimination but it was an example of how Defendants made certain groups feel welcome while Plaintiff was denied accommodations.

30.     By late September, 2018 Plaintiff's team settled in with Josue Facio Vazquez as team leader and Ritu Siani as Scrum Master. Agile Scrum is similar to a court with a jury as the team and a mediator, the Scrum Master. The team lead is like a Foreman. There is also a product owner, which was a business person from USAA. Team members are supposed to pick their own tasks and not just be told what to do. If the whole team comes from countries without juries that will not work. India

had juries under English rule but then got rid of them. Mexico does not have juries. In China the judges know the outcome in advance. Without a culture of juries teams tend to become fake. Individual rights like disability accommodations are considered against the team.

31. Plaintiff reached a breaking point over an issue related to overtime. Softworld wanted us to work a full forty hours. Settlage said they had a three year contract with USAA and they wanted to fill it completely. If someone took a day off they wanted others to take those hours. When Plaintiff raised questions when Anadan was given more hours his team bullied him to mind his own business. One Chinese programmer hit Plaintiff in the head with his bag. Plaintiff has an implant in his head. Since we were squeezed in a tight space it was hard to tell if it was intentional. Plaintiff was not hurt but obviously concerned and stressed. Over time Plaintiff was being treated worse and worse while others were getting special treatment.

32. Oct 31, 2019, Plaintiff wrote an email copied to Alicia Riley at USAA related to team issues, security and accommodations. Defendant USAA never responded to Plaintiff's email. In their statement Softworld claims they apologized to USAA manager Riley, and asked USAA to ignore Plaintiff's complaints. It seems obvious now they wanted to preserve the contract without regard for Plaintiff's accommodations. At the least USAA should have requested Softworld not prevent any ADA accommodations based on USAA contract requirements. Texas Labor Code has references to aiding and abetting and preventing accommodations in discrimination. USAA certainly knew about this issue by this point, and before that.

33. Settlage and another Softworld manager Alan Sarasohn called Plaintiff through Skype to discuss his complaint. Neither of them were in Texas. Sarasohn was typically in Boston. Softworld was mostly concerned about Plaintiff's complaint because Plaintiff sent it to USAA managers. The Softworld statement to the EEOC focuses on this issue, that Plaintiff was instructed not to contact USAA. Since the contract between Defendants Softworld and USAA did not allow headsets Plaintiff

Page 12 - Complaint

felt USAA could help resolve the problem. Such a contract violates the ADA. USAA also controlled the video so they could resolve that issue. Plaintiff would have been happy if Softworld dealt with USAA on these issues but they refused. Sarasohn was careful to make sure Plaintiff could hear this conference call, which Plaintiff did by calling Skype though his phone, which has Bluetooth. Bluetooth is required on cell phones by law. Still Defendants did not offer to let Paintiff use Bluetooth with other Skype calls.

34.     Defendant Softworld complained that Plaintiff requested a statement that he was doing a reasonable job. Much later in their statement to the EEOC Defendant admits Plaintiff did an adequate work. Plaintiff requested this because he believed they were about to fire him. In fact, Defendants did fire part of a team of people right after that. The individuals fired were mostly African Americans, which bothered Plaintiff. Settlage said he did not know the terminations were coming and it was ordered by USAA, likely Riley. That demonstrates that USAA was in control of the environment, that they can terminate programmers. That makes them the employer. Plaintiff has the names of the individuals terminated at that time.

35.     After Plaintiff's complaint his team was assigned to work under Frank Robinson, a young USAA programmer who was promoted. The work Plaintiff's team was doing with the Fedwire was peculiar and Robinson was one of the people who knew USAA code well. Plaintiff's team met with Robinson at USAA offices several times. This was nice with space and easy to hear everyone. Robinson suggested that everyone call him "Evil Frank" to distinguish himself from Plaintiff. This was funny but after some time bothered Plaintiff because it treated his complaint as a joke. For a few weeks Plaintiff's team was merged with Robinson's team of USAA employees. A few members of Plaintiff's team went to USAA stand-up meetings every day.  Much of what Robinson did for Plaintiff's team was training. Robinson used Skype to attend stand-ups with Plaintiff's team. Plaintiff's team met in a WeWork ODC conference room with poor speakers. Plaintiff could not hear

Page 13 - Complaint

Robinson well, and he did not use video. This humiliated Plaintiff. His team members cut him some slack because they all had accents, but Robinson was easy to hear. In the following days Robinson ignored Plaintiff's email messages, and the team could see because they copied each other on email.

36.     Nov. 15, 2019, Plaintiff wrote another email that he copied to Frank Robinson of USAA. He did not copy Alicia Riley. Robinson was working with Plaintiff's team on a regular basis. This email complained that Robinson did not use video and discriminated against Plaintiff by ignoring him along with other things. In their statement to the EEOC Softworld claims Plaintiff made threats. He threatened to complain to the board of directors of USAA if they kept ignoring his complaints. Plaintiff hoped that since this is a veteran owned company, and veterans often have hearing loss, they wouldn't ignore him. Plaintiff also mentioned his previous lawsuits related to accommodations. The next morning Plaintiff was told he would be fired if he contacted USAA again. Frank Robinson quit working with the team.

37.     Defendant Softworld's statement says that Alicia Riley, Defendant USAA manager, made a complaint against Plaintiff, essentially blaming him for the project not working. All the programmers on that Fedwire project were gone by the time Plaintiff left, including two other teams. USAA should not have blocked Plaintiff's accommodations, which were free and available because they were built into hardware and software by law. This is retaliation with malice along with aiding and abetting and preventing compliance with disability law in the ADA, and TLC.

38.     Plaintiff was contacted by Brook Kwong, the HR person for Defendant Softworld in Boston. Softworld was not able to email Plaintiff through USAA email. Plaintiff received this email late at night. By this point four months had passed with Softworld refusing to provide accommodations. Kwong's email included a form he was to have a doctor fill out. Much later Plaintiff figured it is for FMLA, family, medical and leave. The first four questions ask if Plaintiff is able to work, what he can do and when he will be able to do more. These are not proper questions for someone asking for

accommodations. Even after Plaintiff complained Defendant insisted he fill it out. The ADA allows some medical questions but not inappropriate ones.

39.     Unlike a sick person Plaintiff had no plans to go to the doctor. It would take time make appointments to have this form completed, possibly months. He would need to go to a specialist not covered by insurance and they schedule appointments far out. Most doctors would probably say Plaintiff is competent but years ago Plaintiff was subject to something like eugenics. A doctor told him he should not have children for no good reason. Plaintiff planned to provide Softworld a report given to him by an audiologist but realized they would likely misunderstand it. Defendant Softworld believed there was some option to Bluetooth. The option is not to get the implant and use writing or sign language. The purpose of a cochlear implant is to allow Plaintiff to pass as nearly normal. Defendant was interfering with that.

40.     Plaintiff responded to Brook Kwong's email that night, November 19, 2019. Plaintiff does not have emails sent through USAA, but he has this email. Defendant Softworld claims this is racist along with other communications by Plaintiff. It was not racist. Plaintiff did state, "If you want me to submit proof of competency you have to require the same from everyone. How about if you require proof of English skills worthy of a college graduate." Plaintiff only pursued the issue because they were blaming him for widespread communication issues. Rather than attacking Plaintiff they should have taken this issue seriously. Everyone needs to make an effort to communicate clearly and not cancel anyone because they complain about bad language. Plaintiff did compare the medical questions to what the Nazis did. Kwong complained about that several times, but it was a valid comparison since they continued to deny accommodations.

41.     Kwong came to Dallas for a Softworld dinner the next day. The morning after the dinner Plaintiff was called into meet with Kwong along with Alan Sarasohn. Plaintiff did not feel well because at the dinner a young programmer who had taken the day off sick sat next to Plaintiff and

gave him his flu. This was before Covid, but there were reports of it appearing in November of 2019. In 2003 Plaintiff complained to his college that he felt he might have picked up Sars-1. After the dot.com crash California had a cash crunch, such that they cut university budgets. They began recruiting Chinese students heavily. There were several in his class. Plaintiff was told that he couldn't complain about that because it was racist. Employers need to be concerned with racial issues and national origin, but that doesn't mean no one can talk about it. Plaintiff has a right to complain if he feels discriminated against. His rights are as important as immigrant rights.

42. In this meeting Kwong contradicted everything Plaintiff said, even that he complained about young people. She claimed that is age discrimination. Plaintiff focused on age because he was trying to avoid national origin and racial issues. Indians have a favorite acronym, kt. It means knowledge transfer. They expect older American programmers to transfer their knowledge. Plaintiff worked in tech during the dot.com era. There were few people using the internet so you could get away with ignoring security and such. You could invent something no one thought of. Now, nothing is new and there is little room for errors. The contracting business has a "churn" model. They are always hiring because they lose people. India always has more people but programming is not so easy that a young person can learn in months or even a few years. Plaintiff sent Kwong a link about age discrimination along with two pdfs from the EEOC. Softworld continued to accuse him of discrimination, which is a way to deflect his complaints.

43. Plaintiff became emotional about being called deaf. He is deaf without the implant but it does work. It took a great effort to make it work. Kwong pressured Plaintiff to state who called him deaf. Plaintiff stated they were Indians who were hard to understand. In their statement Softworld calls this national origin discrimination. Plaintiff was answering Kwong's question. He felt it was better not to name individuals. Plaintiff might have mentioned the Chinese because of Sars-1. Kwong is not Asian, but her name appears Chinese. Sarasohn explained how the project limited the number of

H-1bs per the USAA contract, so Plaintiff's complaint about bad English was inaccurate. Plaintiff later learned that the H-1b limits the numbers of Indians and Chinese but other countries are able to get green cards. There were a large number of Latin Americans, Africans and various other nationalities on the project. Softworld was having difficulty finding programmers so they would rather blame Plaintiff for the language issue. At the end Sarasohn asked Plaintiff what he thought they should do. Plaintiff suggested that there was not enough space. Sarasohn stated that would not be possible to change. His last words were that Plaintiff could always quit.

44.    A week after meeting with Kwong the Plaintiff was attacked during a sprint planning meeting. The team blamed Plaintiff for Frank Robinson cutting off from the group. Anadan yelled at Plaintiff to give up his task to the young programmer who gave him a flu. Plaintiff believed Defendant Softworld had passed along what he said in their meeting. Plaintiff did not talk about racial or nationality issues with his team. This was only with the managers regarding his accommodations. Plaintiff did have problems with Indians in the past. Doing a little research it is clear why. Indians have contempt for people with hearing loss even as they did pass disabilities rights laws, including Affirmative Action. The United States never overturned Buck v. Bell and the military is exempt from disability laws. Plaintiff was surrounded by people who agree that disability rights are not as important as other rights.

45.    Plaintiff sent an email on Nov. 27 to complain about how he was attacked in the meeting the previous day. This was only copied to members of his team with Defendant Softworld. Since it was through the USAA email system they could read it. USAA could read all emails and watch Plaintiff all day through the security cameras in every room. In early December the Plaintiff sent more emails regarding accommodations to his managers and Brook Kwong at Defendant Softworld.

46.    On December 18, 2019 his managers asked Plaintiff to come to the main conference room. There were ten people in and out while they tested Plaintiff with a hearing device. It was similar to

Page 17 - Complaint

when Saddam Hussein paraded POWs on television before Desert Storm. USAA was watching this through the video. Plaintiff wasn't a prisoner but he thought he might be fired. No one talked with him for the last few weeks. Defendant built their own hearing aid. It was a box that plugged into the wall with a long wire with a microphone on one side and a long wire and headphones on the other side. Accommodations do not need to be exactly what the employee asks for, but they need to provide a solution. Cochlear implants are like Apple phones, with only select accessories. It would be dangerous otherwise. Softworld indicated on Plaintiff's taxes that he was given some $800 special benefit. That might be what they spent on devices that could not possibly work. Defendant knew they did not work, which is bad faith. It seems unlikely they would go to so much trouble to avoid giving free accommodations unless USAA made clear they would not alter the contract.

47.     Kwong admitted in email this device had a problem with feedback. Since they knew it did not work Plaintiff did not feel compelled to complain it did not work. Plaintiff does not enjoy complaining all the time. In their statement to the EEOC Softworld claims the device did work and the Plaintiff was happy with the device. Defendant provides names of the IT individuals as witnesses, but Plaintiff doubts these individual would appear under oath. They should not be allowed to testify since they had no right to provide Plaintiff with medical care. Congress did pass a law allowing some hearing aid devices to be sold over the counter but that is not finalized and it would only apply to mild hearing loss, not someone with an implant. If Defendant claims they provided accommodations through ad-hoc devices they should be prosecuted for medical fraud.

48.     Even if Softworld provided a legitimate hearing aid that makes no sense to someone with a cochlear implant. An implant doesn't need sound amplified. Defendant Softworld's lawyer seemed to realize this, but is still confused. Softworld claims the IT support person asked for more information but the Plaintiff did not offer any. They claim that Plaintiff should have indicated if he needed more volume or clarity. Plaintiff worked with the IT staff previously on other issues. They

Page 18 - Complaint

did not seem comfortable with helping Plaintiff with these accommodations. Plaintiff did suggest he could use part of the device offered as a splitter to plug into the headphone jack. Softworld seemed to want an air gap like for nuclear weapons. Rather than relax rules to accommodate Plaintiff they became more extreme. This was not consistent as other employees openly used their phones to listen to music. Defendants were engaging in retaliation and malice.

49. Softworld complains Plaintiff refused to cooperate. Plaintiff provided them with enough information but he needed to protect himself. Kirk Douglas made a movie, Saturn 3, where an evil robot, Hector, gives him an implant in the back of his head. He kills himself rather than submit. This movie has poor ratings but it made an impression on Plaintiff as a child. Plaintiff was concerned that Defendants demonstrated contempt for Plaintiff that they did not have for other medical issues. Softworld had someone come in to give flu shots, and this person had some license. The implant is in Plaintiff's in head is a few millimeters from his brain. Defendants intended to create some claim they provided accommodation, but at the same time stress Plaintiff into quitting. It discourages Plaintiff from believing he can work in a normal job if people treat him this way.

50. Defendant Softworld's statement claims they bought Plaintiff a streamer that worked. Plaintiff has a streamer that came with the implant. Defendant never provided him with a streamer. They even admit they don't know what type of implant he has, which you would need to know. A streamer uses Bluetooth or connects like headphones, but without the microphone. He would need to use Bluetooth to talk in Skype. That's what Plaintiff asked for the first week. In their statement to the EEOC Defendant admits they did not allow Bluetooth. It is hard to believe Defendants do not understand there needs to be a connection. This is bad faith and malice.

51. Defendant Softworld did do one thing that helped. They improved the speakers in the conference room. With good speakers Plaintiff could hear someone like Frank Robinson fine. Softworld could have claimed this was the accommodation, but Defendant wrote they always

intended to improve the speakers. Then Plaintiff's new team was assigned a different conference room that didn't have new speakers. Defendant had speakers in a box but claimed they didn't have wall mounts. At that point Defendant USAA was avoiding communicating with Plaintiff, which is the reason he needed accommodations. He did not need Skype to communicate with Softworld.

52.     Plaintiff was relieved not to be terminated before Christmas as he was the previous year. Programmers on the project hoped to get hired by USAA. Plaintiff gave up on that but other banks pay even more and they're hiring programmers. Plaintiff spoke with several banks in the last year. They can find out something happened at USAA. A typical programmer at a bank might make $150,000 a year, assuming they hire you directly. Rather than complain further Plaintiff sent an email to IT support and thanked them for the help. They did help him on other issues. Plaintiff thought with new speakers he could hear in the conference room. As long as they did not retaliate against him he might make it without accommodations.

53.     The next day Plaintiff was removed from the Fedwire team. At his final meeting with the team Plaintiff could see in the security videos that USAA was watching him. David Settlage of Softworld told Plaintiff Defendant USAA ordered Plaintiff off his team. The Softworld statement made clear Defendant USAA executive Alicia Riley was behind this. Plaintiff did not have any Skype conferences with USAA after that, other than one time. Defendant USAA moving Plaintiff off teams suggests they controlled his work. This is retaliation for continually requesting accommodations, it interfered with Plaintiff's employment with Softworld and it demonstrates USAA acted as the employer. Plaintiff was moved to the back corner of the room away from anyone else. This was more relaxing but suggested segregation. Plaintiff heard USAA eventually gave up on using Softworld for the Fedwire project and decided it needed to be done in house, suggesting that it was not Plaintiff's fault. It also shows the project needed to be done with a team of employees and that USAA did treat Plaintiff's team like employees for a time.

Page 20 - Complaint

54.     Plaintiff briefly worked with another team with a tech lead, Sanjiv Surve, who was also Indian. Ritu Siani was also the Scrum Master for this group. One man was African, one from China, one Russian, a Latin American, an American and a couple more Indians. Everyone had an accent, but not as bad as the previous group. With an implant you have to make an effort but it does pay off. In a stand-up meeting when it came Plaintiff's turn to speak Surve said he couldn't understand Plaintiff. Surve wouldn't let him talk. It was like a literacy test and he decided Plaintiff failed. Plaintiff once liked that tech had so many accents because he fit in. With his implant people can see now that he is different. Surve was one of the managers who spent the most time with USAA managers. He wouldn't have treated Plaintiff like that unless he knew USAA wanted Plaintiff gone. This was not the team Plaintiff was slated to join, so he did not attend more of their meetings.

55.     On January 6, 2020 Plaintiff sent an email to David Settlage to make clear that the video issue was not resolved. Settlage again ignored the request for the video accommodation. Plaintiff does not have the email but he has a list of the dates of emails he sent and the details of what they said. Softworld should have a copy of this email. By this time Settlage had his email set up so he was connected with USAA. Plaintiff also asked for a promotion in this email. Settlage responded to that, no. The reason Plaintiff asked for a promotion is multiple lower level programmers on his previous team were promoted to his level. They complained about being below Plaintiff given his hearing loss. Still Plaintiff thought the job might work because they had such a high turnover. His new team was all recently hired employees.

56.     In Plaintiff's final weeks he was able to help the new group because of his previous experience. Then a new senior level programmer joined Plaintiff's team, Rambabu Bagadi. He was the only person Plaintiff knew of to join the project from USAA. Bagadi unsettled Plaintiff. He targeted Plaintiff in stand-up meetings. You're not supposed to contradict what people say in a stand-up, because it is supposed to be quick. At first this new team had another scrum master, but he quit

Page 21 - Complaint

the team. Ritu Siani was back again. She normally did not allow interruptions, but she allowed
Bagadi to attack Plaintiff because he came from USAA.

57.    Bagadi set up a meeting with USAA through Skype to discuss code issues for a task Plaintiff
had been working for weeks. This was a security review of USAA code. This project was also
related to compliance. Other people on the team were using Smart Bear to share code with
programmers at USAA. Smart Bear is designed to share code when you're making changes. Skype
is not good for that. Security issues can be detailed, not unlike a legal document. Plaintiff asked
Bagadi not to set up Skype meetings for him, but Bagadi ignored him. The USAA people did not use
video in this meeting, and Plaintiff did not have Bluetooth. Bagadi did the talking but then expected
Plaintiff to finish the task. It is hard to believe Bagadi was not aware of the hearing issues given
Plaintiff had trouble understanding Bagadi. Plaintiff alleges USAA was engaging in retaliation. It is
one thing to not be responsible for accommodations and another to humiliate someone you block
from getting accommodations. Plaintiff was worried where this was going.

58.    Josue Facio Vazquez was placed as Plaintiff's team lead again. Plaintiff sent an email to
Facio Vazquez that Rambabu Bagadi should finish the task discussed on Skype. Then Facio Vazquez
took all Plaintiff's tasks away from him. Plaintiff had a Skype meeting with Facio Vazquez and
Bagadi to review his work. Facio Vazquez asked detailed questions about Plaintiff's work while
Bagadi mocked him. Plaintiff spent weeks going through many documents related to security on
about a hundred different items. This was a review of work done by Surve's team before Facio
Vazquez joined the Plaintiff's team. It was not possible to explain it all in an hour. Facio Vazquez
wanted Plaintiff to get verbal approval for everything he did, which made no sense considering this
was a compliance project. Everything was supposed to be written down. Plaintiff alleges Facio
Vazquez and Bagadi both had trouble reading and writing English. Bagadi sent Plaintiff one email
that made no sense. Bagadi has a graduate degree from a Texas college, so it could be he did not care

Page 22 - Complaint

if Plaintiff understood. By pressuring Plaintiff to rely on verbal communication it both put him at a disadvantage and allowed them to give a verbal literacy test. Plaintiff has plenty of education but the people testing him are not native English speakers.

59.     His last week Plaintiff was officially transferred to another manager at USAA, but the new manager avoided Plaintiff. The team had a blowup on Plaintiff's last day, March 4, 2020. This had nothing to do with race, as Softworld claims. The other programmers were angry with Facio Vazquez because he invalidated their tasks. The Scrum software was set up so tasks could not be deleted because this was compliance project and the banking regulators wanted everything recorded. Instead, Facio Vazquez would invalidate tasks. Sometimes Vazquez did that because Defendant USAA would change the task. Members of the team were also angry because they were forced to help Facio Vazquez proof his English. They were not English native speakers either but it bothered them to be used like a secretary.

60.     In this meeting Facio Vazquez tried to reassign Plaintiff's tasks to other programmers on the team, but they didn't want to take his task. When Plaintiff complained Ritu Siani interjected that Plaintiff should give Facio Vazquez a break because he had trouble with English. Plaintiff began arguing with Siani. Possibly she did not understand what was going on. At that point the rest of the team left the room. Siani said that Plaintiff's hearing accommodations were not important to anyone other than him, that people only care about their own issues. Facio Vazquez trying to move Plaintiff's tasks to other programmers had nothing to do with English skills. Plaintiff felt this was retaliation and would leave him with nothing to do. Plaintiff alleges others on the team who refused to go along were also terminated.

61.     Ritu Siani implied that Plaintiff's issues are not important because he's the only one with a hearing loss on the project. There were a hundred people on the Softworld project with English issues, but the number of Americans with hearing loss is more than the number of immigrants in

Page 23 - Complaint

America. The number of Americans with hearing loss and college degrees is more than the number of immigrants with college degrees. How come there's only one person with a hearing loss and so many foreign people work for Defendants? It is implied people with hearing loss are unable to work. There is a class action lawsuit of about 250,000 Iraq and Afghanistan veterans claiming that their hearing was damaged by faulty ear plugs from 3M. Just a few months ago a few veterans won millions of dollars in an ear plug case. Veterans always had hearing loss, but they used to have jobs. There were more accommodations in the era before the Disabilities Act than there are now. Instead, there is concern about who is the employer and with immigrant rights.

62.     Plaintiff took March 2, 2020 off. He sent a message to Siani that he had a cough. That's in the transcript on WhatsApp, which the team used to communicate. Plaintiff came back to work in the middle of that week but his cough was not gone. Plaintiff did have a coughing fit right after that contentious meeting on March 4. People saw him cough. Plaintiff received a message from Scott McKenzie of Defendant Softworld a few minutes later. It came through SMS and had Plaintiff's name on it, so he assumed Softworld knew he had a cough. The SMS said he need to go home if he had a cough. Plaintiff went home and didn't think he needed to clear it with Siani or Facio Vazquez. By this time it was becoming obvious covid would shut the project down.

63.     Plaintiff alleges Softworld was trying to find an excuse to terminate him and that is why Siani and Facio Vazquez attacked him in that meeting. Softworld was not sure if USAA would allow the project to go remote, so they wanted problems gone. USAA had made it clear they did not want to work with Plaintiff. The next day Plaintiff sent a message that he was sick and also that he felt discriminated against and the stress was making him sicker. This was sent also through WhatsApp, which his team used because USAA email was closed off. The day after that Plaintiff sent a message that he was not coming in again. Siani asked if he was ever coming it again. Plaintiff said again meant like yesterday. Plaintiff also complained about discrimination. There was no follow up.

64.     Over the weekend major events like SXSW were canceled and by Monday, March 9, 2020 they started canceling school in the local area. Softworld had discussed what would happen if Covid spread in a meeting a few weeks earlier. Siani told the team there was no way the project could go remote because of all the security. David Settlage had previously said that and so did Alan Sarasohn when Plaintiff asked him in person in November, 2019. That Monday, March 9, 2020, the Plaintiff wrote through WhatsApp that he was not coming in again. He said he didn't expect to return. Given he still had a cough and the project squeezed so many people in a small space it could not continue like that. Plaintiff was removed from the WhatsApp group by Ritu Siani. He was cut off from the project. His security badges no longer worked. With Covid WeWork restricted the building so you couldn't get in without a working badge.

65.     The next day, March 10, Softworld sent an email stating Plaintiff was terminated for not coming to work. They normally gave everyone two weeks. Plaintiff was normally paid on Friday. Instead, they immediately sent Plaintiff final pay. The payment was came through the Federal Reserve, which was not how Defendant Softworld normally paid. Defendant USAA does have a direct connection to the Fed and the Fed itself was involved in Plaintiff's project. That same day Defendant USAA began sending people home because of covid. Two days later Defendant Softworld issued a statement that the ODC project would be going remote. Softworld never let Plaintiff know about that. USAA must have had some communication with Softworld about going to remote earlier in the week. If Defendants paid him on the normal schedule that announcement would have come before his last pay. Because of all the security and issues related to covid Plaintiff was unaware. Plaintiff alleges Defendant terminated him without providing options given to others on the project and that this was retaliation for complaints about lack of accommodations.

66.     When Plaintiff found out Softworld moved remote he sent an email that they should hire him back. Softworld did not respond. Remotely Plaintiff would have been able to use Bluetooth on his

own laptop. With everyone using their laptops they used video more often. In recent months Teams, Zoom and other video have offered captions. Defendant manager David Settlage often talked about how USAA had a contract for three years and fifteen teams. The USAA contract was why Softworld claimed they could not allow Plaintiff to use Bluetooth or a headset. There were two years remaining on the contract. Plaintiff recently offered to work with USAA directly through his own company for the last remaining year as settlement. Contracting companies typically bill at more than double what the programmer is paid. Few Americans like giving up half their pay so they bring in more young workers on visas, which encourages more discrimination against all involved.

## CLAIM FOR RELIEF

67.     Defendants USAA and Softworld are covered entities under Section 101(2) of the ADA, 42 U.S.C. Section 12111(2). At all relevant times Defendants have continuously been doing business in the State of Texas, in the city of Plano, and continuously had at least 15 employees. At all relevant times Defendants have continuously been an employer engaged in an industry affecting commerce under Section 101(5) and 101(7) of the ADA, 42 U.S.C. § 12111(5), (7).

68.     At all relevant times Plaintiff has been a qualified individual with a disability, hearing impairment, and is covered by Title I of the ADA, as amended, 42 U.S.C. § 12101 et seq. Plaintiff has a cochlear implant, a device that is only provided to people with profound hearing loss, that works properly, and requires Bluetooth compatibility with telephone-like equipment. Without a properly functioning cochlear implant Plaintiff's hearing impairment substantially limits a major life of hearing.

69.     Plaintiff filed a charge of employment discrimination with the EEOC. Plaintiff received a Notice of Right to Sue for civil action regarding claims against each Defendant presented to the EEOC. Plaintiff has filed this Complaint within the time allowed in the Notices of Right to Sue authorizing him to bring this action.

70.     Defendants Softworld and USAA discriminated against Plaintiff by not providing accommodations for his disability, hearing loss. Defendant USAA interfered with Plaintiff's ability to work for Softworld by preventing accommodations. Defendants Softworld and USAA terminated Plaintiff without informing him of the option to work remote. Defendants Softworld and USAA's conduct violated Section 102(a) and (b)(1) and (b)(2) and (b)(3) and (b)(4) and (b)(5)(A) and (d)(4) of Title I of the ADA, as amended, 42 U.S.C. § 12112(a) and (b)(1) and (b)(2) and (b)(3) and (b)(4) and (b)(5)(A) and (d)(4).

71.     Defendants Softworld and USAA further engaged in discrimination through segregation, retaliation, training, aided and abetted, and preventing compliance with disability laws. Softworld and USAA segregated Plaintiff. Softworld and USAA retaliated against Defendant by moving him off his team after he requested accommodations. Softworld and USAA aided and abetted each other to prevent accommodations for Plaintiff. Softworld and USAA prevented compliance with disability law by denying him access to accommodations built into computer hardware and software. Softworld and USAA maintained a contract that subjected Plaintiff to discrimination. The above unlawful employment practices were intentional and done with malice or reckless indifference. Defendants violated Section 503(a) of Title V of the ADA, as amended, 42 U.S.C. § 12203(a)(b)(c) and T.L.C. § 21.051, 21.054, 21.055, 21.056.

72.     As a result of Defendants Softworld and USAA unlawful employment actions, Plaintiff suffered economic damages including back pay and front pay, pursuant to the ADA and T.L.C. § 21.258 (1)(2)(6).

73.     Plaintiff is entitled to compensation pursuant to the ADA and T.L.C. § 21.2585(1)(2).

74.     Plaintiff is entitled to recover Plaintiff's reasonable attorney fees and costs, including witness fees, pursuant to T.L.C. § 21.259.

75.     Plaintiff is entitled to post-judgment interest on all damages, expenses and fees from the date of judgment until the date paid.

## PRAYER FOR RELIEF

Plaintiff prays for the following judgment against the Defendants:

(a).     Order the Defendants to make whole Plaintiff, who was adversely affected by Defendants' discriminatory conduct, by providing appropriate back pay with interest, in amounts to be determined at trail, and other affirmative relief necessary to eradicate the effects of their unlawful employment practices, including but not limited to rightful-place hiring or front pay in lieu thereof.

(b).     Order the Defendants to make Plaintiff whole by providing compensation for past and future pecuniary losses resulting from the unlawful practices described above, including job search expenses.

(c).     Order the Defendants to make Plaintiff whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described above, including but not limited to, humiliation, emotional pain and suffering, stress, inconvenience in amounts to be determined at trail.

(d).     Order the Defendants to pay Plaintiff punitive damages for their malicious and reckless conduct described above, in amounts to be determined at trial.

(e).     Plaintiff's attorney fees and costs.

(f).     For such other and further relief as the Court may deem just and equitable.

Dated: August 9, 2021

8/9/21

Francis Palardy
Pro Se
7081 Siena Pl, Apt 112
The Colony, TX 75056
57007code@gmail.com

469 - 970 - 6655

Page 28 - Complaint